UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

SAMUEL O'BRIEN,

                    *Plaintiff*,

    -against-                                    **MEMORANDUM AND ORDER**

                                                 22-CV-3117(KAM)(LB)

CITY OF NEW YORK,
DEPARTMENT OF EDUCATION

                    *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Samuel O'Brien commenced this action on May 26,

2022, against Defendant, the DOE,[1] and the City of New York

alleging discrimination on the basis of race, national origin,

sex, and religion; and retaliation, pursuant to Title VII and

NYSHRL, as well as intentional infliction of emotional distress.

Plaintiff seeks damages in the amount of $300,000, including

$200,000 in punitive damages.  *See* (ECF Nos. 1, Complaint; 20,

Amended Complaint ("AC").)  The City of New York was terminated

from this action on August 7, 2022, when Plaintiff filed the

Amended Complaint.  (AC ¶ 20.)

      Presently before the Court is Plaintiff's September 11,

2023 filing (ECF No. 54, Proposed Second Amended Complaint,

_____

[1] All capitalized terms and acronyms herein have the meaning ascribed to them
in the Court's August 14, 2023 Memorandum and Order.  *See* (ECF No. 51.)

"PSAC"), which Plaintiff submitted in response to the Court's August 14, 2023 Memorandum and Order, indicating that the Court would "consider granting further leave to amend if Plaintiff is able to provide a proposed Second Amended Complaint that addresses the factual deficiencies discussed in [the Court's August 14, 2023] Memorandum and Order[.]"  (ECF No. 51, August 14, 2023 Memorandum and Order, "M&O" at 53.)  The Court interprets Plaintiff's September 11, 2023 filing as both a proposed Second Amended Complaint and a motion for leave to file a Second Amended Complaint, as the Court has not previously granted Plaintiff leave to file a Second Amended Complaint.

For the reasons set forth below, Plaintiff's motion for leave to file a Second Amended Complaint is **GRANTED**, but Plaintiff's motion to file the proposed Second Amended Complaint currently docketed as ECF No. 54 is **DENIED**.

<u>**BACKGROUND**</u>

On August 2, 2022, following a pre-motion conference in anticipation of Defendant's motion to dismiss Plaintiff's May 26, 2022 Complaint, the Court granted Plaintiff leave to file an Amended Complaint.  Because Plaintiff is proceeding in this action pro se, the Court provided Plaintiff with detailed instructions on how to file an Amended Complaint, including to advise Plaintiff that an amended pleading "completely replace[s] and supersede[s]" any prior Complaint.  *See* (Aug. 2, 2022 Pre-

Motion Conference Minute Entry) ("Plaintiff is advised that his amended complaint will completely replace and supersede the complaint filed previously . . . Plaintiff shall include all facts and applicable law for the claims he wishes to bring against Defendants . . . including, if he wishes, any facts . . . included in the previous complaints [and] the date and time, in order of events, of all alleged claims of discrimination, retaliation, defamation, and factual evidence of the discrimination he experienced, if any, on the basis of his race, national origin[,] gender, and/or religion.")  Plaintiff filed his Amended Complaint on August 7, 2022.

On December 22, 2022, Defendant filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* (ECF No. 37.)  In opposition to Defendant's motion, Plaintiff asserted a new claim for the first time without seeking leave from the Court or from Defendant to further amend his pleadings.  (ECF No. 42 at 8.) Specifically, Plaintiff asserted that he was subject to a hostile work environment in violation of Title VII and NYSHRL. (*Id.*)  Notwithstanding the Court's caution to Plaintiff that "[a] party is not entitled to amend its complaint through statements made in motion papers[,]" the Court addressed and dismissed Plaintiff's hostile work environment claim, and other claims, on the merits in its August 14, 2023 Memorandum and

3

Order.  (M&O at 49) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (internal quotation marks omitted)).

On August 14, 2023, the Court granted Defendant's motion to dismiss in part and denied the motion to dismiss in part.  *See generally* (M&O.)  The Court dismissed Plaintiff's claim that he was discriminated against on the basis of his race, religion, national origin, and sex in violation of Title VII and NYSHRL; Plaintiff's claim that he was subject to a hostile work environment in violation of Title VII and NYSHRL; Plaintiff's intentional infliction of emotional distress claim; and Plaintiff's claim for punitive damages.  (M&O at 53.)

With respect to Plaintiff's allegations that he had been retaliated against in violation of Title VII and NYSHRL, this Court denied Defendant's motion to dismiss Plaintiff's claims that he was retaliated against on two of four instances alleged by Plaintiff and granted Defendant's motion to dismiss Plaintiff's retaliation claim as to two of the alleged instances.  (M&O at 52-53.)  Specifically, this Court found that Plaintiff engaged in protected activity starting on April 7, 2021, when Plaintiff filed an OEO complaint and that "Plaintiff's allegation that Defendant engaged in retaliatory conduct. . . by issuing a time and attendance letter on June 22, 2021 advising Plaintiff of excessive lateness and unauthorized

absences, allegedly for the first time, [was] sufficient to withstand [Defendant's] motion to dismiss the retaliation claim[.]"  (M&O at 42.)  This Court further held that "Plaintiff's claim that he was retaliated against by Defendant when he was terminated from his probationary employment after he engaged in protected filings of discrimination complaints [was also] sufficient to meet the 'de minimis' standard" to survive a motion to dismiss.  (M&O at 48) (citing *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020)).

As for Plaintiff's allegation that he suffered from retaliatory conduct and statements from "school staff," the Court noted that the alleged incidents predated Plaintiff's protected activity and granted Defendant's motion to dismiss Plaintiff's claim.  (M&O at 45-47.)

Finally, Plaintiff's allegation that he received biased performance reviews in retaliation for his complaints was also dismissed because Plaintiff failed to "clarify, cite, or explain what biased school reviews" his Amended Complaint referred to "[n]or [did] he state the timing of the allegedly biased school reviews by Defendant[.]"  (M&O at 43.)

The Court advised Plaintiff that although he had already been granted leave to amend his Complaint and although the Court had addressed further, unauthorized amendments to his pleadings, Plaintiff would nevertheless be permitted to provide a proposed

Second Amended Complaint as an attachment to a motion for leave to replead.  (M&O at 53.)  The Court instructed Plaintiff to file a proposed Second Amended Complaint that "addresses the factual deficiencies discussed in [the] Memorandum and Order by September 11, 2023."  (M&O at 53-54.)  On September 11, 2023, Plaintiff filed, via ECF, the instant proposed Second Amended Complaint.  (PSAC.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) dictates that leave to amend a Complaint shall be freely given "when justice so requires."  Upon dismissal of a Complaint pursuant to Fed. R. Civ. P. 12(b)(6), "[i]t is the usual practice [of the district court] . . . to allow leave to replead." *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Nevertheless, "[t]he amendment process has its limits[.]" *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014).  The decision to grant or deny leave to amend "is within the sound discretion of the district court[.]" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"When [a] plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).  "Leave to

6

amend, though liberally granted, may properly be denied for:
'undue delay, bad faith or dilatory motive on the part of the
movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by
virtue of allowance of the amendment, [and] futility of
amendment[.]" *Ruotolo v. City of New York*, 514 F.3d 184, 191
(2d Cir. 2008) (quoting *Forman v. Davis*, 371 U.S. 178, 182
(1962)).  Where a district court denies leave to amend based on
the determination that the proposed amendment would be futile,
the district court must demonstrate "that the proposed new
pleading fails to state a cognizable claim and thus would be
subject to dismissal under Rule 12(b)(6), or is otherwise
facially inadequate." *BLT Restaurant Group LLC v. Tourondel*,
855 F. Supp. 2d 4, 13-14 (S.D.N.Y. 2012).

## DISCUSSION

At an initial matter, Plaintiff's proposed Second Amended
Complaint purports to "clarify the factual discrepancies noted .
. . in [the] Memorandum and Order dated August 14, 2023 as it
relates to the retaliation complaint in violation of title VII
and NYHRL" (PSAC at 1), but does not sufficiently comport with
the standard for pleadings set forth in Fed. R. Civ. P. 8 or
with the Court's previous instructions to Plaintiff.  This
Court has advised Plaintiff that an amended pleading "completely
replace[s] and supersede[s]" previous complaints and yet,

Plaintiff's proposed Second Amended Complaint reads more like supplemental briefing in connection to Defendant's motion to dismiss than a pleading pursuant to Fed. R. Civ. P. 8.

Plaintiff's proposed Second Amended Complaint refers to both exhibits and factual assertions from his prior pleadings, notwithstanding the Court's instruction that any previous pleading, including both the Complaint and the Amended Complaint, would be "completely replace[d] and supersede[d]" by an amended pleading.  (Aug. 2, 2022 Pre-Motion Conference Minute Entry.)  Plaintiff also refers to several exhibits that are not appended to his proposed Second Amended Complaint including exhibits to Defendant's position statement to the New York State Division of Human Rights.  *See e.g.,* (PSAC ¶ 10) ("exhibit I in Defendant's position statement to the NYS Division of Human Rights"); (PSAC ¶ 11) ("In the defendant's own position statement . . . Exhibit B, [] clearly states. . ."right).  Although the proposed Second Amended Complaint appears to reflect Plaintiff's intention to move forward with his Title VII and NYSHRL retaliation claims, Plaintiff fails to state any of the background facts underlying his retaliation claims or to identify the statute(s) that Defendant allegedly violated as the basis for his retaliation claims.  Indeed, the proposed Second Amended Complaint makes no mention of his surviving claim that Defendant retaliated against him by terminating his probationary

employment, which could indicate Plaintiff's abandonment of that claim.

Notwithstanding the improper format of Plaintiff's proposed Second Amended Complaint, the Court reviews Plaintiff's proposed Second Amended Complaint for substantive adequacy, including to determine whether the proposed Second Amended Complaint constitutes a "repeated failure to cure deficiencies by amendments previously allowed," and whether the proposed Second Amended Complaint would be a "futil[e] amendment[.]" *Ruotolo*, 514 F.3d at 191 (internal citation omitted).

Plaintiff's proposed Second Amended Complaint alleges facts regarding his retaliation claims: (1) elaborating upon the circumstances surrounding Defendant's allegedly retaliatory time and attendance letter (PSAC ¶¶ 8-13), a claim which the Court previously sustained; (2) asserting that by the time of his November 12, 2020 UFT Complaint, Plaintiff had made both formal and informal complaints that constitute protected activity (PSAC ¶¶ 1-6), which the Court previously dismissed; and (3) describing the allegedly biased performance reviews that Plaintiff contends were issued in response to Plaintiff's complaints of discriminatory treatment (PSAC ¶¶ 14-16, 18-20), which the Court previously dismissed.

Plaintiff's remaining contentions attempt to clarify minor factual discrepancies that have no bearing on the dismissal of

any of Plaintiff's claims.  *See* (PSAC ¶¶ 7) (Plaintiff clarifies that "the second time [] [he] was given a key by the school administration" was on March 23, 2021, a day after returning to HSYCD from a COVID-related school closure that occurred from November 19, 2020 to March 22, 2021); *see also* (PSAC ¶ 17) (Plaintiff alleges he "did not remember the specific date that school closed due to the COVID precautions.")

    As set forth below, Plaintiff's proposed Second Amended Complaint is not the proper vehicle to supplement facts for Plaintiff's surviving retaliation claim in connection with Defendant's time and attendance letter.  Additionally, Plaintiff's proposed Second Amended Complaint fails to cure the factual deficiencies in two previous pleadings with respect to the November 12, 2020 UFT Complaint and Plaintiff's communications with HYSYCD and UFT personnel leading up to the UFT Complaint.  However, the proposed Second Amended Complaint's allegations regarding a retaliatory performance review adequately address the factual deficiencies noted by the Court in the August 14, 2023 Memorandum and Order and state a cognizable claim for retaliation under Title VII and NYSHRL with respect to Defendant's April 28, 2021 performance review.  Accordingly, the proposed amendments in Paragraphs 14-16 of the proposed Second Amended Complaint cannot be deemed futile based on the current record and warrant an amended pleading as such.

## I.   Defendant's Time and Attendance Letter

Plaintiff first alleges in the proposed Second Amended Complaint that Defendant retaliated against him by virtue of Defendant's June 22, 2021 time and attendance letter accusing Plaintiff of excessive tardiness and unauthorized fractional absences.  (PSAC ¶¶ 8-13.)  In the August 14, 2023 Memorandum and Order, this Court ruled that Plaintiff adequately pleaded facts sufficient to state a claim that he was retaliated against in the form of Defendant's time and attendance letter.  The Court previously denied Defendant's motion to dismiss Plaintiff's retaliation claim as it relates to Defendant's time and attendance letter, and thus, a proposed Second Amended Complaint is not the proper vehicle for Plaintiff to supplement facts for his surviving claim, particularly given Plaintiff's prior opportunities for amendments.  Accordingly, the Court considers Plaintiff's factual assertions relating to Plaintiff's November 12, 2020 UFT Complaint and the Defendant's allegedly retaliatory and biased performance reviews.

## II.  Plaintiff's November 12, 2020 UFT Complaint

Plaintiff's second contention in the proposed Second Amended Complaint regarding Plaintiff's retaliation claims relies on Plaintiff's November 12, 2020 UFT Complaint and the communications he exchanged with UFT representative, Mr. Cochran, and AP Ms. Silberstein leading up to his November 12,

2020 UFT Complaint.  (PSAC ¶¶ 1-6.)  Plaintiff asserts that his
UFT Complaint regarding a bathroom key constitutes protected
activity in support of his retaliation claim.  (PSAC ¶ 5.)

Plaintiff states that on November 12, 2020, "[he] clearly
outlined to [UFT representative,] Mr. Cochran, that [he] felt
discriminated against because of [his] gender."  (PSAC ¶ 1.)
Plaintiff further alleges that based on this November 12, 2020
discussion with Mr. Cochran (PSAC ¶¶ 1-2), the October 9, 2020
and November 12, 2020 texts to AP Ms. Silberstein (PSAC ¶¶ 4-5),
and his November 12, 2020 UFT complaint (PSAC ¶ 3), Plaintiff
had engaged in protected activity by November 12, 2020 in
contrast to the Court's finding that Plaintiff failed to
adequality plead that the UFT complaint constitutes protected
activity within the meaning of Title VII and NYSHRL.  In the
August 14, 2023 Memorandum and Order, the Court provided the
following explanation for dismissing the retaliation claims
predicted on the November 12, 2020 UFT Complaint:

> Plaintiff alleges that he complained about the
> bathroom key to the UFT representative and UFT main
> office, and also that he complained informally to
> several colleagues about his difficulty accessing his
> preferred restroom with a personal key.  Mr. O'Brien
> does not allege that the UFT complaints made any
> reference to his race, national origin, or sex and
> thus, the UFT complaints do not constitute protected
> activities under the participation clause of either
> Title VII or NYHRL. Neither do these UFT complaints
> constitute protected activities under the opposition
> clause because Plaintiff does not allege that he
> complained of or opposed discriminatory treatment
> when complaining, either to the UFT representative,

12

> Mr. Cochran, or the UFT office on November 12, 2020.
> Plaintiff's UFT complaint that Defendant failed to
> provide Plaintiff with a key to the fourth-floor
> restroom does not itself constitute a 'practice made
> unlawful by Title VII' or [NYSHRL].

(M&O at 39-40.)

In his proposed Second Amended Complaint, Plaintiff makes virtually identical assertions regarding his texts to AP Ms. Silberstein and his UFT Complaint. Indeed, in support of his assertion that he engaged in protected activity before the date of his April 7, 2021 OEO complaint, Plaintiff refers to the very exhibits appended to his Amended Complaint, which he now seeks to supersede with the proposed Second Amended Complaint. Of the exhibits, neither the October 9, 2020 text nor the November 12, 2020 text reflecting Plaintiff's communications with AP Ms. Silberstein include any assertion of discriminatory treatment. *See* (AC at 37, Ex. H, October 9, 2020 text); (PSAC at 16, Ex. A, November 12, 2020 text.) Nor does the exhibit that Plaintiff refers to as the UFT Complaint include any reference to discrimination on the basis of Plaintiff's sex, or otherwise. *See* (AC at 16, Ex. A, UFT Complaint.) Plaintiff's assertion that "[t]he school administration was well aware of [his] intention to file a complaint" belabors the same argument that this Court has already rejected. (PSAC ¶ 4.) As noted in the Court's August 14, 2023 Memorandum and Order, "Plaintiff's UFT complaint that Defendant failed to provide Plaintiff with a key

13

to the fourth-floor restroom does not itself constitute a 'practice made unlawful by Title VII' or [NYSHRL]." (M&O at 40) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015)).

Similarly, Plaintiff's proposed Second Amended Complaint describes his November 12, 2020 discussion with UFT representative, Mr. Cochran, in much the same way that Plaintiff described the same conversation in the Amended Complaint. *Compare* (PSAC ¶ 2) (Mr. Cochran's "advice was that there was no issue with using the 5th floor bathroom and that it was used as a unisex bathroom in the past. He noted that there was nothing wrong with the school asking me to do so . . . I told him that maybe to him it may not have been a concern, but as a father of two girls, and a person who had strong religious and moral convictions, it was an issue for me to use a female bathroom") *with* (AC ¶ 16) ("On speaking with Mr. Cochran, he took the same perspective as the school administration . . . I explained that I was a man with strong religious beliefs and that I thought I was morally obliged to not enter [the] restroom[.]")

In the proposed Second Amended Complaint, however, Plaintiff now asserts that he "clearly outlined to Mr. Cochran that [he] felt discriminated against because of [his] gender." (PSAC ¶ 1.) Plaintiff elaborates that he informed Mr. Cochran of his belief that "because [he] was male[,]" his concerns were

14

"being taken lightly" and that "had it been a woman asking for access to a bathroom that had a male sign attached to it, it would never have been ignored[.]"  (PSAC ¶ 2.)  Plaintiff's assertion that he "clearly outlined" his belief that he had been discriminated against is contradicted by his own recounting of his discussion with Mr. Cochran wherein he made the purported allegation of discrimination.  In recounting this discussion, Plaintiff stated that other male teachers were treated differently than he was, thus undermining any claim that the UFT Complaint was protected activity within the meaning of Title VII and NYSHRL.  Specifically, the proposed Second Amended Complaint alleges that "there [were no] other male teacher[s] that used that 5th floor bathroom[,]" which Plaintiff alleges Mr. Cochran confirmed, and that "no one else had to go through the ordeal that [he] had to go through in requesting a key" to his preferred restroom, including other male teachers.  (PSAC ¶¶ 2, 4.)

    As the Court has now reiterated multiple times, the fact that Plaintiff alleges that he believes he was deprived of a key to his preferred restroom does not itself raise an inference of discrimination on the basis of Plaintiff's sex and does not, therefore, constitute protected activity within the meaning of Title VII's or NYSHRL's retaliation clauses.  Plaintiff's continued assertion that all other male teachers were provided

with a personal key to a men's or unisex restroom also
undermines his assertion that he engaged in protected activity.
*See* (M&O at 25, 35-36); *see also* (M&O at 40) ("Plaintiff's UFT
complaint that Defendant failed to provide Plaintiff with a key
to the fourth-floor restroom does not itself constitute a
'practice made unlawful by Title VII' or by [NYSHRL].
Therefore, Plaintiff's UFT complaint does not constitute
protected activity under Title VII or NYSHRL[]") (internal
citation omitted).

Plaintiff's allegation that his UFT Complaint constituted
protected activity, before he filed his April 7, 2021 OEO
Complaint, because he complained in the UFT Complaint that he
was deprived of a personal key to his preferred restroom even
though "no one else" and "[no] male teachers" were subject to
similar treatment (PSAC ¶ 2), reveals Plaintiff's fundamental
misunderstanding of what constitutes protected activity.  The
Court's Memorandum and Order explained the legal requirements of
protected activity.  (M&O at 38-40.)  Plaintiff's November 12,
2020 UFT Complaint does not "oppose[] [a] practice made unlawful
by Title VII [or by NYSHRL]."  (M&O at 39) (citing *Littlejohn*,
795 F.3d at 316) (internal quotation marks omitted).  Nor does
the UFT Complaint exemplify an instance where Plaintiff "made a
charge, testified, assisted, or participated in any manner in an

16

investigation, proceeding, or hearing under' Title VII [or NYSHRL]." (*Id.*)

Plaintiff's proposed amendments regarding his November 12, 2020 UFT Complaint and his informal communications with Mr. Cochran and AP Ms. Silberstein are the latest of Plaintiff's repeated failures to cure the factual deficiencies of previous amendments. *See Forman*, 371 U.S. at 182 (leave to amend under Fed. R. Civ. P. 15(a)(2) should be "freely given" only "in the absence of any apparent or declared reason-such as. . . repeated failure to cure deficiencies by amendments previously allowed"). Accordingly, the Court will not grant any further leave to amend with respect to Plaintiff's retaliation claims arising from Plaintiff's November 12, 2020 UFT Complaint and related discussions with UFT representative, Mr. Cochran, and AP Ms. Silberstein.

## III. Plaintiff's Allegations of Biased Performance Reviews

Plaintiff's third contention in the proposed Second Amended Complaint relates to his allegation that Defendant issued a negative performance review and a false charge of insubordination in retaliation for his complaints of discriminatory treatment.

### A. Performance Reviews from the April 28, 2021 Lesson

After failing to "clarify, cite, or explain what biased school reviews by Defendant" allegedly contradict the reviews of

17

"his field officer" in his previous pleadings (M&O at 43),
Plaintiff states in the proposed Second Amended Complaint that
"Exhibit D [to the proposed Second Amended Complaint] . . . is
an observation rating of the [HSYCD] administration" which
allegedly contradicts Plaintiff's "field representative's
assessment of the very same virtual lesson."  (PSAC ¶ 14.)
Plaintiff further states that "[HSYCD] staff had full access to
[his] virtual classrooms and [his] lesson plans since the
beginning of the school term" and that "at no time prior to the
observations did any member of [the] staff bring any issues with
[his] lesson plans, teaching slides, or teaching methods" to his
attention.  (PSAC ¶ 15.)

Exhibit D to the proposed Second Amended Complaint, which
was not previously submitted by Plaintiff with his original
Complaint or Amended Complaint, reflects an "annual professional
performance review (APPR) teacher observation report" dated
April 28, 2021 (the "HSYCD APPR").  (PSAC at 21-24, Ex. D.)  The
HSYCD APPR attributes a rating of "1 – Ineffective" in every
category for which Plaintiff received an applicable rating and
observed that Plaintiff's "questions and discussion do not
challenge students to reason, reflect on learning, [and]
[j]ustify their thinking for future inquiry."  (PSAC at 23, Ex.
D.)  The evaluation further stated that although Plaintiff
"ha[d] [a] good rapport with the [] students[,]" Plaintiff's

18

lesson "lack[ed] [a] coherent structure," was "confusing[,]" and
"lacked focus." (*Id*.)  The HSYCD APPR included additional
resources for Plaintiff's consideration and indicated that a
follow up observation would be conducted on May 18, 2021.  (PSAC
at 24, Ex. D.)

Exhibit E to the proposed Second Amended Complaint reflects
three "Observation Debriefing Form[s]" from Plaintiff's field
consultant (the "Field Assessments").  The lessons referenced in
the Field Assessments are dated February 8, 2021; March 11,
2021; and May 3, 2021.  Plaintiff alleges that Exhibit E
represents his "field representative's assessment of the very
same virtual lesson" as the April 28, 2021 lesson described in
the HSYCD APPR (PSAC ¶ 14), but the Field Assessments reflected
in Exhibit E appear to relate to three separate lessons and two
of the lessons appear to predate the April 28, 2021 lesson
described in the HSYCD APPR.  *See* (PSAC at 27, Ex. E) (lesson
dated "2/8/21"); (PSAC at 26, Ex. E) (lesson dated "March 11,
2021").  The only Field Assessment that does not appear to
predate the April 28, 2021 lesson described in the HSYCD APPR is
dated May 3, 2021.  Plaintiff explains this discrepancy by
noting that "[t]he date on [the] field representative's
assessment is different because it is the date that [Plaintiff]
submitted the recorded lesson to her" as opposed to the date of
the actual lesson.  (PSAC ¶ 14.)  This explanation, which

applies only to the first of the three Field Assessments, is
supported by the similarity in the substance of the May 3, 2021
Field Assessment and the HSYCD APPR.  Contrary to Plaintiff's
assertion that the HSYCD APPR and May 3, 2021 Field Assessment
reflect "disparate findings" (PSAC ¶ 14), both reports remark on
Plaintiff's good rapport with students, Plaintiff's efforts to
go over the lesson plan with students, and the need for
Plaintiff to further challenge the students and provide the
students with opportunities and encouragement to take
initiative.  *Compare* (PSAC at 22, Ex. D) ("The teacher has good
rapport with the [] students," "As each student logged in
[Plaintiff] went over the lesson with him/her," "Recommendation:
. . . students [need to be encouraged to] take initiative to
increase the challenge, complexity, relevance and rigor of
learning experiences") *with* (PSAC at 25, Ex. E) ("Areas of
strength . . . rapport with students," Plaintiff was "able to go
over the lesson content with [students]," Plaintiff needs to
"challenge students to find and correct [areas in need of
improvement]").  Although the HSYCD APPR described Plaintiff's
lesson as "lack[ing in] focus" while the May 3, 2021 Field
Assessment described Plaintiff's lesson plan as having "clear
objectives," this is a far cry from the "disparate findings"
that Plaintiff alleges "clearly show bias" on the part of HSYCD
officials, particularly in light of the common threads among

20

both assessments and the absence of any rating system in the May 3, 2021 Field Assessment.

Putting aside the purported contradictions between the HSYCD APPR and the May 3, 2021 Field Assessment, Plaintiff's factual assertions in Paragraphs 14-16 of the proposed Second Amended Complaint adequately address the factual deficiencies noted in the Court's August 14, 2023 Memorandum and Order. Specifically, Plaintiff provides information that "clarif[ies] . . . [and] explain[s] what biased school reviews by Defendant [allegedly] contradict[] his field officer's reviews" and Plaintiff "state[s] the timing of the allegedly biased school reviews by Defendant . . . in relation to Plaintiff's protected activity."  (M&O at 43.)  Moreover, the facts alleged in Paragraphs 14-16 of the proposed Second Amended Complaint are sufficient to state a cognizable claim for retaliation under Title VII and cannot be dismissed as futile, based on the current record.

"[T]o establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the

materially adverse action or actions." *Carr v. New York City Transit Authority*, 76 F.4th 172, 180 (2d Cir. 2023).

First, as discussed in the Court's August 14, 2023 Memorandum and Order, Plaintiff engaged in protected activity on April 7, 2021 when he filed an OEO Complaint. (M&O at 40) ("It was not until Plaintiff's April 7, 2021 OEO complaint, wherein Plaintiff lists 'ethnicity, gender, [and] race' as the basis for allegations of discrimination that Plaintiff engaged in a protected activity under Title VII and NYHRL") (internal citation omitted).

Second, it is undisputed that Defendant was aware of Plaintiff's protected complaints. *See* (M&O at 48) ("Plaintiff had engaged in multiple instances of protected activity and Defendant does not dispute that HSYCD was aware of Mr. O'Brien's protected complaints.")

Third, Plaintiff adequately alleged that the HSYCD APPR constitutes a materially adverse employment action. To support a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)(internal quotation marks and citation omitted). Although "[c]riticism of an employee in the

course of evaluating and correcting [his] work is not, in itself, a materially adverse employment action[,]" *Dimitradcopoulos v. City of New York*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014), a poor performance evaluation in response to a complaint of discriminatory treatment may be considered a materially adverse employment action if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 179 (citing *Burlington Northern*, 548 U.S. at 68).

Plaintiff alleged that the performance issues outlined in the HYSCYD APPR were never brought to his attention prior to the date of the HSYCD APPR and that no prior observations were conducted notwithstanding the HYSCYD administration's full access to Plaintiff's virtual classrooms. (PSAC ¶ 15.) Plaintiff further alleged that "the only time the administration . . . or any other member of staff other than [his] co-teachers attended a live lesson with [him] [was the] actual lesson observation[] for which [he] was rated as 'the lowest among the YCD staff.'" (*Id*.) Plaintiff's rating as "the lowest among the YCD staff" was ultimately cited as evidence of "poor pedagogical performance" and the reason for which his "probationary period [of employment at HSYCD] was discontinued[.]" (ECF No. 20 at

64, Ex. S.)[2]  In light of the surrounding circumstances of the
HSYCD APPR and the ultimate termination of his probationary
employment that Plaintiff alleges stemmed from the negative
HSYCD APPR, Plaintiff has made sufficient allegations to support
an inference that "a reasonable employee in [Plaintiff's]
position" may well have been dissuaded "from complaining of
unlawful discrimination . . . [and] that [Plaintiff] endured
[an] actionable adverse employment action[] with respect to his
Title VII retaliation claim." *Milien v. City of New York,
Department of Education*, 20-cv-480 (MKB), 2023 WL 6050119, at
*19 (E.D.N.Y. Sep. 15, 2023).

Finally, Plaintiff's allegation regarding the causal
connection between his protected activity and the HSYCD APPR is
sufficient to state a cognizable claim for retaliation under
Title VII.  Plaintiff alleges that he received a poor evaluation
from "[HSYCD] school staff because of [his] complaints" (PSAC ¶
14), an allegation which is supported by the close proximity
between the April 7, 2021 OEO Complaint and the April 28, 2021
HSYCD APPR (approximately three weeks).  Because a Plaintiff may

---

[2] Although Plaintiff does not include the New York State Division of Human
Rights Determination and Order after Investigation as an exhibit to the
proposed Second Amended Complaint, Plaintiff does appear to quote the
language from the Determination and the Court accordingly considers the
Determination to be incorporated by reference.  *See Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (finding that "on a motion to dismiss,
a court may consider 'documents attached to the complaint as an exhibit or
incorporated in it by reference . . . [including] documents either in
plaintiffs' possession or on which plaintiffs had knowledge and relied on in
bringing suit'") (internal citation omitted).

establish causation . . . 'indirectly, by showing that the protected activity was followed closely by the discriminatory treatment" Plaintiff's allegation of a causal connection is sufficient to meet his "de minimis" burden of proof "at the prima facie stage." *Farmer*, 473 F. Supp. at 330.

Accordingly, Plaintiff's proposed amendments in Paragraphs 14-16 of the proposed Second Amended Complaint sufficiently remedy the factual deficiencies of his previous pleadings, as noted in the Court's August 14, 2023 Memorandum and Order.  The proposed amendments in Paragraphs 14-16 of the proposed Second Amended Complaint also constitute a facially adequate claim, at the prima facie stage, that Plaintiff was subject to retaliation in violation of Title VII and NYSHRL in connection with the HSYCD APPR.

### B. The May 21, 2021 Charge of Insubordination

Plaintiff's remaining contentions relate to Defendant's May 21, 2021 letter charging him with insubordination.  *See* (PSAC ¶¶ 18-20.)  Plaintiff disputes the statement in Defendant's May 21, 2021 letter admonishing him for violating instructions regarding the finalization of an IEP for the second time.  (PSAC ¶ 18.) Plaintiff alleges in the proposed Second Amended Complaint that, with respect to the first instance of insubordination, he had received permission to finalize the IEP.  (PSAC ¶ 19.)

Plaintiff explains away the second incident as a "unique circumstance." (PSAC ¶ 20.)

Nothing in Plaintiff's proposed Second Amended Complaint, which simply reiterates his previously alleged objection to the content of Defendant's charge of insubordination, addresses the reasoning set forth by the Court regarding the inapplicability of the Title VII and NYSHRL retaliation framework to Defendant's charge of insubordination. As discussed in the Court's August 14, 2023 Memorandum and Order and reiterated again here, Plaintiff engaged in protected activity within the meaning of Title VII and NYSHRL for the first time on April 7, 2021 at 1:11 pm – not on November 12, 2020 when Plaintiff filed his UFT Complaint. (M&O at 44-45.) The May 21, 2021 letter charging Plaintiff with insubordination describes an April 7, 2021 meeting, which took place at 11:40 am, *before* Plaintiff's 1:11 pm OEO Complaint, and during which Plaintiff was advised of the charge of insubordination, which was alleged to have taken place on March 26, 2021. *See* (M&O at 44.) Whether or not Plaintiff believes his conduct was justified by a "unique circumstance," Defendant's May 21, 2021 letter simply puts into writing Defendant's views about Plaintiff's insubordinate conduct, which Defendant had already communicated to Plaintiff by the time Plaintiff filed his April 7, 2021 OEO Complaint.

Plaintiff's proposed amendments regarding Defendant's charge of insubordination simply restate his objection to the content of the May 21, 2021 letter, but Plaintiff fails to address or cure the repeated factual deficiencies of his allegation that the charge of insubordination constitutes a retaliatory act within the meaning of Title VII and NYSHRL. Accordingly, the Court will not grant any further leave to amend with respect to Plaintiff's retaliation claim based on the charge of insubordination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file a Second Amended Complaint is **GRANTED** as specified herein, but Plaintiff's motion to file the proposed Second Amended Complaint currently docketed as ECF No. 54 is **DENIED**. If he so chooses, Plaintiff may file a proposed Second Amended Complaint no later than January 24, 2023, which will completely replace and supersede any prior pleading. This means that Plaintiff may not refer to the content or exhibits of any prior pleadings in his Second Amended Complaint. Plaintiff must, instead, provide sufficient factual allegations to support each of his permitted claims and may append any applicable exhibits from prior pleadings and any other exhibits, as exhibits to his Second Amended Complaint.

The Court has already advised Plaintiff that his "proposed Second Amended Complaint may not replead claims for intentional infliction of emotional distress, seek punitive damages, or bring claims that were not administratively exhausted." (M&O at 53-54.)  Having reviewed all other factual assertions in the proposed Second Amended Complaint, the Court finds that Plaintiff's assertions are either repetitive of previous factual deficiencies or outside the scope of a Second Amended Complaint authorized by the Court.  Accordingly, Plaintiff is advised that only the following claims may be included in the Court-authorized Second Amended Complaint:

1.   Plaintiff's surviving claim for retaliation on the basis of Defendant's June 22, 2021 time and attendance letter;

2.   Plaintiff's surviving claim for retaliation on the basis of Defendant's termination of Plaintiff's probationary employment; and

3.   Plaintiff's previously dismissed claim for retaliation on the basis of biased performance reviews, which Plaintiff has supplemented with adequately plead facts regarding the HSYCD APPR in Paragraphs 14-16 of the proposed Second Amended Complaint.

Plaintiff is strongly encouraged to review the Court's
August 2, 2022 instructions regarding amended pleadings and to
review Fed. R. Civ. P. 8.


**SO ORDERED**

Dated:    January 3, 2024
           Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York